Russell *v.* Waite *et al.*

| Walker. | |
| --- | --- |
| 1w | 31 |
| 104 | 272 |
| 1w | 31 |
| 110 | 566 |

JOSEPH RUSSELL *v.* AUSTIN B. WAITE *et al.*

In applications for opening decrees obtained regularly by default, no general rule can be laid down; but each case must, in a great measure, depend upon its own circumstances, and the sound discretion of the Court.

Such a decree should be opened only under special circumstances, and to promote the ends of justice.

The assignee of a mortgage takes it subject to all equities existing between the parties to it, at the time of the assignment.

An agreement in the nature of a defeasance is required by the Revised Statutes to be recorded, only when it relates to a conveyance, which, on its face, purports to be absolute.

THIS was a petition filed by the defendant Waite, for the purpose of setting aside a decree.

The bill was filed October 3d, 1840, to foreclose a mortgage, bearing date June 4th, 1838, given by Waite to S. Blanchard, and assigned by Blanchard to the complainant. The bill having been taken as confessed against the defendants, a decree was entered December 7th, 1841, and the mortgaged premises were advertised to be sold March 18th, 1842, at which time the sale was adjourned. The facts, as they appear from the petition, the affidavit of P. R. Adams, and the answer which the defendant Waite wished to put into the bill, were as follows: The mortgage was given to secure the purchase money of the mortgaged premises, which had been purchased by Waite of Blanchard. The parties at the same time entered into a written agreement, under their hands and seals, which was drawn up by Adams, and left with him for safe keeping. By this agreement, Waite bound himself to build a tavern-house on the mortgaged premises by January 1st, 1839; and Blanchard bound himself, at the election of Waite, who was to give him notice thereof on or before November 1st, 1839, to put in as common stock, which should be held by them according to their respective interests, the land he had conveyed, against the improvements to be made by Waite; the land to be put in at $3000, and the improvements at a valuation to be made by disinterested persons. At the solicitation of Blanchard, the tavern-house was built three stories high, instead of two as was required by the original agreement, and the time to build it in was extended to April 1st, 1839, when it was completed; and Waite, both on and before November 1st, notified Blanchard of his election to turn the property into common stock under their agreement, and requested him to select disinterested persons to appraise the improvements. On February 4th, 1839, Blanchard assigned the mortgage to the complainant as collateral security for the

Russell *v.* Waite *et. al.*

payment of certain notes the complainant held against him; but Waite knew nothing of the assignment until a few days previous to November 1st, 1839. Soon after the complainant had filed his bill, Waite went to Adams, who was his attorney, for advice, and Adams told him there was no use in putting in any answer to the bill, as it would be of no benefit to him. Nothing was said at the time about the agreement between Waite and Blanchard. Waite did not make any mention of it, as it had been drawn up by Adams, who knew its contents, and had been left with him by the parties for safe keeping, and was then in his possession. After the mortgaged premises had been advertised for sale by the Master, Waite called on Adams again, and requested to see the agreement, when Adams told him it had been delivered up a long time before ; but on examining his papers he found it was still in his possession. Adams had got the impression that the contract had been delivered up from several conversations he had had with Waite and Blanchard in November, 1839, when they were endeavoring to settle the matter between them; and under that impression he had given to Waite the advice above stated.

*T. Romeyn,* in support of the petition.

*Barstow & Lockwood,* contra.

THE CHANCELLOR. No general rule can be laid down by the Court, to govern it in applications of this kind. Each application must depend, in a great measure, upon its own circumstances, and the sound discretion of the Court. A decree regularly obtained against a party by default should not be opened, unless under special circumstances, and then only to promote the ends of justice. Russell took the mortgage subject to all equities existing

between the mortgagor and mortgagee at the time it was assigned to him. *Livingston* v. *Dean,* 2 *J. C. R.* 479 ; *Murray* v. *Lilburn, Id.* 441 ; *James* v. *Morey,* 2 *Cow. R.* 246. He stands in the place of Blanchard, and his rights under the assignment are the rights of Blanchard under the mortgage, and nothing more.

There was no necessity for recording the agreement, which is in the nature of a defeasance. The Revised Statutes, (page 261, § 32,) refer to conveyances purporting to be absolute upon their face, and not to mortgages.

Waite was misled by his Counsel, who advised him under a misapprehension of the facts; and I do not think the time that elapsed between the discovery of the error and the service of a copy of his petition, with notice of this motion, on the complainant's Solicitor, should prejudice the present application. The copy and notice were served on May 14th, and Waite did not discover the error into which he had been led by his Counsel, until after the mortgaged premises were advertised for sale.

Let the decree, and the order to take the bill as confessed, be vacated, on Waite's paying to the complainant's Solicitor all taxable costs subsequent to, and including the order to take the bill as confessed, and a counsel fee of ten dollars. The order to take the bill as confessed, not to be vacated as against the other defendants.